# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

BRANDON S. KILLORAN,

      Plaintiff,

                                     **Civil Action 2:18-cv-00449**
                                     **Judge Sarah D. Morrison**
    v.                              **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Brandon S. Killoran ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance benefits ("SSDI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 7). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff initially filed for disability insurance benefits on June 4, 2013, alleging disability beginning April 4, 2008. (R. at 93.) The claim was denied initially on October 24, 2013, and upon reconsideration on February 3, 2014. (*Id.*) Upon request, a hearing was held on March 19, 2014, in which Plaintiff, who was not represented by counsel, appeared and testified. (*Id.*)

Kathryn A. Atha, a vocational expert, also appeared and testified at the hearing. (*Id.*) On July 24, 2014, Administrative Law Judge Earl Cates issued a decision finding that Plaintiff was not disabled at any time from April 4, 2008, the alleged onset date, through the date of the decision. (R. at 90–103.)

Plaintiff then again applied for disability benefits on December 22, 2015, alleging disability beginning October 1, 2015. (R. at 248–49.) On February 19, 2016, Plaintiff changed his alleged disability onset date to July 25, 2014. (R. at 250–51.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 128.) Upon request, a hearing was held on September 19, 2016, in which Plaintiff, who was not represented by counsel, appeared and testified. (R. at 32–65.) Connie O'Brien, a vocational expert, also appeared and testified at the hearing. (R. at 58–63.) On November 18, 2016, Administrative Law Judge Paul Yerian issued a decision finding that Plaintiff was not disabled at any time from July 25, 2014, the alleged onset date, through December 31, 2014, the date last insured. (R. at 125–142.) On February 28, 2017, Administrative Law Judge Yerian's decision was vacated by the Appeals Council, which found that the date last insured was December 31, 2015, not December 31, 2014, meaning the decision did not adjudicate the period between January 1, 2015 and December 31, 2015. (R. at 146–48.)

Plaintiff then appeared and testified, without representation by counsel, at a supplemental hearing before of Administrative Law Judge Yerian on May 10, 2017. (R. at 67–89.) Carl Hartung, a vocational expert, also appeared and testified at the hearing. (R. at 86–89.) Before Administrative Law Judge Yerian issued a decision, he retired, and Administrative Law Judge Jeannine Lesperance was assigned to Plaintiff's case. (R. at 244.) On November 22, 2017, Administrative Law Judge Lesperance issued a decision finding that Plaintiff was not disabled at any time after July 25, 2014, the alleged onset date. (R. at 6–26.) On March 9, 2018, the

Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the September 19, 2016 hearing in front of Administrative Law Judge Paul Yerian, Plaintiff, who was not represented by counsel, testified that he was born in 1978, was right-handed, was about six feet tall, and weighed approximately two-hundred pounds. (R. at 39–40.) Plaintiff further testified that he was not married and did not have children. (R. at 40.) Plaintiff stated he lived in a one-story house by himself. (*Id.*) He further stated his brother helps him and that his brother is "staying permanently for the most part to help [him] around the house." (*Id.*) Plaintiff testified that he has a driver's license, owns a vehicle, and drives it on average two to three times a week. (R. at 40–41.) Plaintiff further testified that the farthest distance he typically drives at one time is "maybe" twenty miles. (R. at 41.)

Plaintiff testified that he was a high school graduate and has a Veterans Affairs ("VA") pension for disability. (*Id.*) In discussing his job history, Plaintiff testified that he worked at Staples in 2000 for "about five months" as a merchandiser, which involved "stocking shelves, helping customers, [and] work[ing] the cash registers to check out the customers." (R. at 42.) Plaintiff further testified that he would unload delivery trucks and the maximum weight he lifted at the job was "probably roughly 50 pounds." (*Id.*)

Plaintiff next discussed working at Global Trade Alliance in 2003. (R. at 43.) Plaintiff testified that he worked in the body shop but had "some issues with management" and was transferred to the maintenance department which he ran "for a number of months." (*Id.*)

Plaintiff testified that he worked at Showcase Motors in Arizona in 2004 and 2005 where he was hired "to open a reconditioning shop for reconditioning automobiles." (*Id.*) In that role Plaintiff stated that he was the manager and had hire and fire authority as well as ordering supplies and "set[ting] up the entire shop from the ground up for the dealership." (R. at 44.) Plaintiff then discussed working for Wells Fargo in 2010 for three to four months. (R. at 44–45.) Plaintiff testified that he worked as a phone banker and "took care of customer accounts over the phone." (R. at 45.) Plaintiff further testified that in this job he was seated most of the day and did not do any lifting. (*Id.*) Plaintiff next discussed working for both ADS[1] and Autozone in 2015, though not at the same time. (R. at 46.) At Autozone, Plaintiff testified that he worked as a commercial delivery driver. (*Id.*)

Plaintiff testified that he could not work from July 2014 to December 2014 because of the "same issues [he is] dealing with today." (R. at 46–47.) Plaintiff further testified that he has lower back pain on both sides, shooting pains down his legs, a "fire sensation" down his legs, back, and neck, a sensation "like bugs crawling on [his] skin," a ringing in the ears called tinnitus, a traumatic brain injury, and a PTSD diagnosis. (R. at 47.) Plaintiff stated that the low back pain is present all the time. (*Id.*) Plaintiff further stated that yard work would aggravate his back pain. (R. at 48.) Plaintiff also stated that the shooting pain in his legs happens every day. (*Id.*) Plaintiff stated that yard work, doing dishes, and general housework aggravates his leg pain. (*Id.*) Plaintiff testified that the tinnitus occurs "on average 5-6 times a day in either ear." (R. at 49.) Plaintiff also testified that doctors have told him he gets confused "especially in very extreme situations" due to his traumatic brain injury. (R. at 50.) Plaintiff further testified that

---

[1] ADS refers to the company "Alliance Data Retail Services." (*See* R. at 282, 286.)

his depression and PTSD can interfere with his ability to interact with other people. (R. at 50–51.)

Plaintiff testified that he has been using a cane for approximately six months on the VA's suggestion. (R. at 53–54.) He also testified that he wears a back brace. (R. at 54.) Plaintiff stated that when he first moved into his apartment in Ohio in, approximately, October 2014 he had to do "a little bit of extra cleaning and yard work" because the property "wasn't the best." (R. at 54–55.) Plaintiff further stated that he did his own shopping but occasionally would go with his sister or brother to the store. (R. at 55.) Plaintiff indicated that his brother was helping him and did most of the shopping. (*Id.*)

At the May 10, 2017 supplemental hearing in front of Administrative Law Judge Paul Yerian, Plaintiff, who was not represented by counsel, again testified that he worked at Staples for about five months in 2000 as a merchandiser. (R. at 76.) Plaintiff further testified that he was on his feet the whole day in that job and would typically have lifted boxes of paper weighing fifty to sixty pounds. (R. at 77.) Plaintiff next testified that he worked full-time for Global Trade Alliance doing work on cars. (*Id.*) Plaintiff stated he worked at Wells Fargo in 2010 for three to four months doing customer service over the phone. (R. at 78.) Plaintiff further stated that for that job he sat most of the day and did computer work. (*Id.*) Plaintiff next testified that in 2015 he worked for Autozone for about four months where he did delivery of auto supplies and sometimes loaded the truck himself. (*Id.*) Plaintiff further testified that he had problems with coworkers at Autozone including "several instances where it almost came down to a fight within the workplace." (R. at 84.) Plaintiff testified that he also worked at ADS where he handled collections. (R. at 78.) He indicated that at ADS he did not have problems with coworkers and did not really socialize inside or outside the workplace. (R. at 84.) Plaintiff

stated that his biggest problem was dealing with the customers "cussing at [him] and trying to refrain from cussing back." (*Id.*) Plaintiff confirmed that he has not worked since then. (R. at 78.)

Plaintiff explained that since the September 2016 hearing he had undergone neck surgery for spinal stenosis. (R. at 79.) Plaintiff further testified that he had a "bulging disk that was pressing up against [his] spinal cord causing all kind[s] of muscle spasms and nerve irritation causing the pain shooting down [his] left arm and shoulder." (*Id.*) Plaintiff stated this problem was present before January 1, 2016 and that it made it "nearly impossible" to use the left side of his body. (*Id.*) Plaintiff testified that he was able to go back to work in 2015 by "work[ing] through the pain as much as [he] could" but he "can't do it anymore." (R. at 80.)

Plaintiff testified that in his lower back he has "sharp pains shooting" around his sides and down his legs. (*Id.*) Plaintiff further testified the pain comes from strenuous work or walking for a long period of time. (*Id.*) Plaintiff stated that night terrors make him twist and turn in his sleep, so he wakes up feeling like he has "been hit by a truck" because of the low back pain. (*Id.*) Plaintiff testified that because of his PTSD he experiences flashbacks to his time in Iraq when he was in the military, night terrors, and problems with fireworks. (R. at 81.) Plaintiff further testified that he is single and does not "have much of a social life." (*Id.*)

Plaintiff stated that the only thing that had changed since the first ALJ's decision on July 24, 2014 was his neck and shoulder issue. (R. at 82.) Plaintiff further stated that from July 2014 to January 2015[2] his neck condition did not get worse, but that he "had the same problems the entire time." (*Id.*) Between July 2014 and January 2016, Plaintiff testified that the biggest

---

[2] The ALJ may have meant to say January 2016, or the record may incorrectly indicate that the ALJ stated January 2015. The ALJ was required to consider the time until the Plaintiff's date last insured, which was December 31, 2015.

problem that would have prevented him from working was his neck, but all his problems are "so close." (R. at 83.)

**B. Vocational Expert Testimony**

Connie O'Brien testified as the vocational expert ("VE") at the September 2016 hearing. (R. at 58–63.) The VE testified that Plaintiff's past work included composite, cashier stocker, light; pallet jack operator, medium; auto body repairer, medium; auto body repair along with auto body shop manager, light; and phone solicitor, sedentary. (R. at 60.) ALJ Paul Yerian asked the VE to assume an individual with Plaintiff's age, education, and past work experience who could perform the requirements of sedentary work except that they cannot climb ladders, ropes, and scaffolds, cannot work around hazards such as unprotected heights or dangerous machinery, can occasionally climb ramps and stairs, can occasionally stoop, kneel, crouch, and crawl, can have exposure to moderate noise, can perform simple, repetitive tasks as well as some moderately complex tasks where there are infrequent changes in work duties or processes that do not involve a fast assembly line pace, strict production quotas, or more than occasional contact with others. (R. at 61.)

The VE testified that the hypothetical individual could perform the work of an addresser, sedentary; document specialist, sedentary; and inspector, sedentary. (R. at 61–62.) The VE further testified than a typical employer's tolerance for absenteeism is less than one day per month, including such factors as tardiness and early departure. (R. at 62.) The VE also testified that a typical employer's tolerance for time spent off task is that if an individual is off task for ten percent or more of the time that would be work preclusive. (*Id.*)

The ALJ asked the VE to assume the first hypothetical again, but in addition to assume that the individual could have contact with supervisors or coworkers no more than twenty

percent of the workday and could have no direct interaction with the public. (*Id.*) The VE testified that assuming those limitations, the individual would be precluded from work. (R. at 62–63.) The ALJ asked the VE to assume the first hypothetical again, but in addition to assume the individual can only maintain attention and concentration for one-hour segments before being off task and would be off task for at least five minutes at a time. (R. at 63.) The VE testified that assuming those limitations, there would be no impact on the ability to do competitive work because workers get a break every two hours. (*Id.*) The ALJ asked the VE to assume the first hypothetical again, but in addition to assume the individual requires redirection from supervisors daily in order to return to task or follow instructions or procedures. (*Id.*) The VE testified that assuming those limitations, the individual would be precluded from work. (*Id.*)

Cart Hartung testified as the vocational expert ("VE") at the May 2017 supplemental hearing in front of ALJ Paul Yerian. (R. at 86–89.) The VE testified that Plaintiff's job at Staples would be considered sales attendant, light/medium. (R. at 87.) The VE also testified that he would put Plaintiff's auto body work at the heavy level because quarter panels weigh more than fifty pounds, as do bumpers. (R. at 87–88.) The VE further testified that he did not think there was enough supervision in the auto body work position to raise it to the level of a managerial position. (R. at 88.)

### III. RECORD EVIDENCE

#### A. State Agency Review

On February 17, 2016, after reviewing the record, William Bolz, M.D. found that there was insufficient evidence to evaluate Plaintiff's claim. (R. at 107–15.) On April 19, 2016, Anne Prosperi, D.O. reviewed the record and affirmed Dr. Bolz's assessment. (R. at 116–24.)

## B. Department of Veterans Affairs

On May 8, 2009, based on a claim for military service connected compensation received on January 15, 2009, the Department of Veterans Affairs ("VA") assigned a thirty percent service connection to Plaintiff's PTSD and a ten percent service connection to Plaintiff's traumatic brain injury. (R. at 354–55.) The VA further determined that Plaintiff's following conditions were not related to his military service, so no service connection could be granted: shoulder pain, back pain, hearing loss, tinnitus claimed as ringing in the ears, and stroke. (R. at 355.) Finally, the VA determined that Plaintiff's overall or combined rating was forty percent.[3]

On February 25, 2012, based on a claim for military service connected compensation received on January 7, 2012, the VA assigned a forty percent service connection to Plaintiff's chronic lumbar strain, a thirty percent service connection to Plaintiff's migraine headaches, and a ten percent service connection to Plaintiff's tinnitus claimed as ringing in the ears. (R. at 360–61.) The VA further determined that Plaintiff's service connected condition of PTSD with traumatic brain injury to include syncope had worsened, so the VA granted an increase to seventy percent.[4] (R. at 361.) The VA also determined that Plaintiff's stroke remained unrelated to his military service, and no new or material evidence had been submitted for the medical condition, so no service connection could be granted.[5] (Id.) Finally, the VA determined that Plaintiff's overall or combined rating was ninety percent. (R. at 362.)

---

[3] The VA document indicated that the VA does not add the individual percentages of each condition to determine a combined rating. (R. at 355.) Instead, the VA uses a combined rating table that considers the effect from the most serious to the least serious conditions. (Id.)

[4] The original assigned percentage was thirty percent. (R. at 361.)

[5] The VA defined "new and material evidence" in the following way:
- "Evidence, including written or oral statements, means that we have not considered it before as new evidence."
- "Material means it applies to the specific issue you are claiming."

(R. at 362.)

On March 10, 2016, the Department of Veterans Affairs reported to Plaintiff that he was entitled to individual unemployability, effective beginning on October 1, 2015, because he "is unable to secure or follow a substantially gainful occupation as a result of service-connected disability." (R. at 568.) The effective date starts the day after a claimant has last been employed. (*Id.*) Because Plaintiff had worked at ADS until September 30, 2015, his individual unemployability benefit became effective on October 1, 2015. (*Id.*) The VA indicated that Plaintiff's PTSD and major depressive disorder were found to cause deficiencies in most areas, including work, and that he was "unable to tolerate mediocrity, easily develop interpersonal conflicts, [ ] [has] a loss of motivation and energy to perform[,] . . . [has] strained concentration, social alienation, suspicion of others, and panic." (*Id.*)

The VA also assigned a new service-connected percentage to Plaintiff's lumber strain of twenty percent.[6] (R. at 569.) The VA indicated that "[a] higher evaluation of 40 percent is not warranted for lumbosacral strain unless the evidence shows: favorable ankylosis of the entire thoracolumbar spine; or, forward flexion of the thoracolumbar spine 30 degrees or less." (R. at 570.) The VA's assignment of seventy percent service connection to Plaintiff's PTSD with traumatic brain injury to include syncope and major depressive disorder remained the same. (*Id.*) The VA's assignment of thirty percent service connection to Plaintiff's migraine headaches also remained the same. (R. at 572.) Finally, the VA's assignment of ten percent service connection to Plaintiff's tinnitus claimed as ringing in the ears also remained the same. (*Id.*)

### C. Plaintiff's Letter

After the May 10, 2017 hearing, Plaintiff sent a handwritten letter to Administrative Law Judge Paul Yerian which stated the following:

---

[6] The original assigned percentage was forty percent. (R. at 569.)

Dear Mr. Yerian,

I am disappointed and feeling misled by the letter and evidence that I have received from you recently. At the end of the hearing on May 10th, 2017 you had stated that I would be given a decision by the beginning of August 2017. What you have sent is not a decision, but rather an opinion of an individual that I have never met nor had any medical care from. I have already established that a major issue with my case was the fact that the Department of Veterans Affairs had not kept thorough records of my medical impairments. What I do have documented is the fact that, as per my March 10, 2016 decision letter from the VA, stated that because of my multiple impairments the Dept. of Veterans Affairs have determined individual unemployability effective date October 1st, 2015. The evidence I submitted at my May 10th, 2017 hearing with you. Though maybe not one individual impairment would qualify me to be disabled the combination of my impairments do qualify me to be considered disabled by the Social Security Administration according to the Code of Federal Regulations 416.920(D). The combination of my impairments has and will prevent me from obtaining gainful employment, and practicing healthy social relations, not to mention the pain and suffering I have endured and continue to endure. It has been established that I have impairments that have lasted for 12 consecutive months or more, and are likely to last for 12 consecutive months. Based on the evidence I am considered disabled, according to the Code of Federal Regulations 416.920(D), because of my multiple impairments.

I prefer not to waste anymore time on this matter by arguing symantics [sic] and believe it is your duty to grant a decision in my favor on this case.

Sincerely,
Brandon Killoran

(R. at 393.)

### D. Vocational Interrogatory

On September 26, 2017, vocational expert ("VE") Carl Hartung submitted a Vocational Interrogatory about Plaintiff at the direction of ALJ Jeannine Lesperance. (R. at 394, 402–08.) The VE indicated there was sufficient evidence to allow him to form an opinion of Plaintiff's vocational status. (R. at 402.) The VE was directed to assume Plaintiff had past relevant work as follows:

| Employer | DOT Title | DOT Code | SVP | Actual SVP | DOT Exert Level | Actual Exert Level |
|----------|-----------|----------|-----|------------|-----------------|--------------------|
| Wells Fargo Bank N/A | Customer service representative | 205.362-026 | 6 | 3 | Light | Sedentary |
| Staples | Sales attendant | 299.677-010 | 2 | | Light | Medium |
| Show Case Motors | Auto body repairer | 807.381-010 | 7 | | Medium | Heavy |

(*Id.*)

The VE was first asked to assume the following:

Assume a hypothetical individual who was born on January 23, 1978, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in [the above table]. Assume further that this individual has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, frequently push and/or pull with the upper and low extremities, never climb ladders, ropes or scaffolds, never work around hazards (such as unprotected heights or exposure to moving mechanical parts), and cannot engage in occupational driving. Mentally, this individual can perform simple and moderately complex tasks at an average pace, without strict time and production demands. He can interact occasionally with coworkers and supervisors but work duties should generally be capable of being performed independently without teamwork or tandem work, and should not require interaction with the general public. He can adapt to occasional changes in work duties.

(R. at 403.) The VE indicated that the hypothetical individual could not perform any of Plaintiff's past work. (*Id.*) However, the VE noted that the individual could perform the jobs of marker, labeler, and housekeeping cleaner. (R. at 404.)

The VE was next asked to assume the following:

Now assume a hypothetical individual who was born on January 23, 1978, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in [the above table]. Assume further that this individual has the residual functional capacity (RFC) to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) except that he can lift and carry 10 pounds frequently and 20 pounds occasionally. He can occasionally climb ramps and stairs, balance, stoop, kneel,

> crouch, and crawl, frequently push and/or pull with the upper and low extremities, never climb ladders, ropes or scaffolds, never work around hazards (such as unprotected heights or exposure to moving mechanical parts), and cannot engage in occupational driving. Mentally, this individual can perform simple and moderately complex tasks at an average pace, without strict time and production demands. He can interact occasionally with coworkers and supervisors but work duties should generally be capable of being performed independently without teamwork or tandem work, and should not require interaction with the general public. He can adapt to occasional changes in work duties.

(*Id.*) The VE indicated that the hypothetical individual could not perform any of Plaintiff's past work. (R. at 405.) However, the VE noted that the individual could perform the jobs of addresser, document preparer, and spotter. (*Id.*) The VE further indicated that if assuming the same hypotheticals, but with the additional limitation that the individual can work in an environment with any degree of consistent noise rated "loud" or less (i.e., moderate, quiet), but cannot work in an environment with sudden or unexpected loud noises such as one using fireworks, or the intermittent use of explosives, this would not change the VE's prior answers. (R. at 406.) Finally, the VE indicated that the total time off task tolerated by most employers in an unskilled work setting would not be more than ten percent or greater, and the amount of absenteeism tolerated by most employers in an unskilled work setting would be less than one day per month. (R. at 408.)

### E. Jonathan W. Nusbaum, M.D.

On June 23, 2017, ALJ Yerian requested Dr. Nusbaum's professional opinion in connection with Plaintiff's claim. (R. at 621.) In July 2017, Dr. Nusbaum completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" about Plaintiff. (R. at 623–27.) Dr. Nusbaum opined that Plaintiff could sit for up to two hours at one time without interruption and stand and walk for up to thirty minutes at one time without interruption. (R. at 623.) Dr. Nusbaum further opined that Plaintiff could sit for a total of six hours in an eight-hour

work day and stand and walk for a total of two hours in an eight-hour work day. (*Id.*) Dr. Nusbaum opined that Plaintiff did not require the use of a cane to ambulate. (*Id.*)

Dr. Nusbaum indicated that Plaintiff could frequently do the following with both his right and left hands: reaching (overhead), reaching (all other), handling, fingering, feeling, and push/pull. (R. at 624.) Dr. Nusbaum further indicated that Plaintiff could frequently use his right or left foot to operate foot controls. (*Id.*) Dr. Nusbaum opined that Plaintiff could occasionally climb stairs, ramps, ladders, or scaffolds. (R. at 625.) Furthermore, Dr. Nusbaum opined that Plaintiff could never tolerate exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle. (R. at 626.) Dr. Nusbaum also opined that Plaintiff could frequently tolerate exposure to humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; vibrations; and loud noise (heavy traffic). (*Id.*) Additionally, Dr. Nusbaum indicated that February 1, 2015 was the date on which the limitations he found were first present and that the limitations he found have lasted or will last for twelve consecutive months. (R. at 627.) Finally, Dr. Nusbaum indicated that there was sufficient objective medical and other evidence to allow him to form opinions about the nature and severity of the Plaintiff's impairments during the relevant time period. (R. at 629.)

## IV. ADMINISTRATIVE DECISION

On November 22, 2017, Administrative Law Judge Lesperance issued her decision. (R. at 6–26.) At step one of the sequential evaluation process,[7] the ALJ found that Plaintiff had not

---

[7] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1.     Is the claimant engaged in substantial gainful activity?
   2.     Does the claimant suffer from one or more severe impairments?

engaged in substantial gainful activity since July 25, 2014, the alleged onset date. (R. at 14.)

The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of

the cervical and lumbar spine, migraine headaches, a post-traumatic stress disorder, and a

depressive disorder. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> [Plaintiff] had the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except the [Plaintiff] could occasionally climb ramps and
> stairs, stoop, kneel, crouch, crawl and balance. The [Plaintiff] could frequently
> push and/or pull with the bilateral upper and lower extremities. The [Plaintiff]
> could perform tasks that did not involve climbing ladders, ropes, or scaffolds,
> occupational driving, or exposure to hazards (such as unprotected heights and
> moving mechanical parts). Mentally, the [Plaintiff] could perform simple and
> moderately complex tasks at an average pace, without strict time and production
> demands. He could interact occasionally with coworkers and supervisors, but
> duties should generally be capable of being performed independently without
> teamwork or tandem work, and should not require interaction with the general
> public. The [Plaintiff] could adapt to occasional changes in work duties. He could
> work in environments with any degree of consistent noise rated "loud" or less (i.e.,
> moderate, quiet), but could not work in environments with sudden or unexpected
> loud noises (such as fireworks or the intermittent use of explosives).

(R. at 18.)

---

3.      Do the claimant's severe impairments, alone or in combination, meet or
equal the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity, can the claimant
perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual
functional capacity, can the claimant perform other work available in the national
economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster
v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Relying on the VE's testimony, the ALJ concluded that Plaintiff is unable to perform any of his past relevant work. (R. at 24.) The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 25.) She therefore concluded that Plaintiff was not disabled under the Social Security Act from July 25, 2014, through the date of the administrative decision. (R. at 26.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff puts forth two assignments of error.  First, Plaintiff asserts that the ALJ failed to properly evaluate the findings from the Department of Veterans Affairs in violation of SSR 06-3P.  (ECF No. 9, at pg. 5.)  Second, Plaintiff asserts that the ALJ erred in failing to hold a supplemental hearing.  (*Id.* at 8.)

### A.  Department of Veterans Affairs Findings

"Social Security regulations provide that 'a determination made by another agency that [a claimant is] disabled . . . is not binding on [the Commissioner].'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 387–88 (6th Cir. 2013) (citing 20 C.F.R. § 404.1504); *see also Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013) ("[A] disability rating by the Veterans Administration is only one factor to be considered in making a social security disability finding.").  The relevant regulation provides as follows:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.

The Commissioner may find another agency's determination relevant, "depending on the similarities between the rules and standards each agency applies to assess disability." *Id.* at 388 (citing SSR 06-03p, 2006 WL 2329939, at *7 (August 9, 2006) ("[B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency.")). Nonetheless, "[w]hile it is clear an ALJ must consider the VA's disability rating, the Sixth Circuit has not specified the precise weight a VA disability rating should receive when an ALJ makes a Social Security disability determination." *Joseph v. Berryhill*, No. 3:16-cv-02259, 2017 WL 3736787, at *5 (N.D. Ohio August 30, 2017). Importantly, an ALJ must explain the consideration given to the other agency's determination in her decision regardless of the weight afforded to the other agency's determination. *Id.* (citation omitted).

Here, the ALJ addressed the VA disability rating as follows:

> I have taken note that the Department of Veterans Affairs has determined that the claimant is totally and permanently disabled in part due to his chronic lumbar strain, posttraumatic stress disorder with traumatic brain injury and syncope, and major depressive disorder; and unable to secure or follow a substantially gainful occupation as a result of his service-connected disability (Exhibits B3F and B11E). However, I assign little weight to the Department of Veterans Affairs determination. In addition to being inconsistent with the evidentiary record in totality, as discussed above, the disability determination processes utilized by the Department of Veterans Affairs and the Social Security Administration are fundamentally different. The Department of Veterans Affairs does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant can perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. The VA expresses disability as a percentage of diminished earning capacity. These percentage values vary with the severity of the veteran's medical condition applied to a hypothetical average person's ability to earn income. In contrast, SSA does not assess degrees of disability. Rather, SSA determines whether a claimant is disabled or blind (see 20 CFR 404.1501). To meet SSA's definition of disability, a claimant must have a severe impairment that prevents him or her from performing past relevant work or any other substantial gainful work that exists in the national economy. Thus, a disability rating by the Department of Veterans Affairs is of little

probative value in these proceedings. Therefore, I assign little weight to this determination. Consistent with Agency policy, however, I have considered all VA records in the record in reaching my decision.

(R. at 23.) Plaintiff asserts that it was improper for the ALJ to discredit the VA's findings "simply because the VA uses a different standard of disability than the Social Security Administration." (ECF No. 9, at pg. 5.) Specifically, Plaintiff asserts that the ALJ's evaluation was in violation of SSR 06-3p.[8]

"SSR 06-3p addresses the evaluation of opinions from sources other than acceptable medical sources, and provides that '[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Dowler v. Comm'r of Soc. Sec.*, No. 3:13-cv-920, 2014 WL 1097921 *27 (N.D. Ohio, March 18, 2014). An ALJ may assign an opinion no weight, so long as she takes it into consideration. *Id.* Here, the ALJ did not violate SSR 06-3p. She assigned the VA determination "little weight" because she found it to be inconsistent with the evidentiary record in totality and because, unlike the Social Security Administration, the VA does not make a "function-by-function assessment" of Plaintiff's capabilities. (R. at 23.)

Although Plaintiff asserts that it was improper to discredit the VA's findings based on differing standards, the ALJ appropriately considered the discrepancies between the two agencies analyses. *See Cantrell v. Colvin*, No. 3:13-cv-00235, 2015 WL 926640 *17 (M.D. Tenn. March 4, 2015) (noting that an ALJ is not bound by the VA's determination because the VA and Social Security Administration have different standards for determining disability); *see also Miller v. Comm'r of Soc. Sec.*, No. 1:16-cv-1441, 2018 WL 1516847, at *5 (W.D. Mich. March 28, 2018)

---

[8] SSR 06-3p was rescinded effective March 17, 2017. 82 Fed. Reg. 15263-01. Here, because Plaintiff's claim was filed prior to the effective date, SSR 96-6p still applies in this case.

(overruling plaintiff's contention of error that the ALJ's consideration of the VA disability award was inadequate because the ALJ found that the standards for VA disability are "very different" from those of the Social Security Administration). Here, the ALJ committed no error in her evaluation in this regard. It is therefore **RECOMMENDED** that Plaintiff's contention of error based on the ALJ's evaluation of the Department of Veterans Affairs findings be

**OVERRULED**.

## B. Supplemental Hearing

Ultimately, the responsibility for ensuring that every claimant receives a full and fair hearing lies with the ALJ. *Richardson v. Perales*, 402 U.S. 389, 411 (1971); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). However, the ALJ "must not become a partisan and assume the role of counsel[.]" *Lashley*, 708 F.2d at 1051. When a claimant appears without counsel, "the ALJ has a duty to exercise a heightened level of care and assume a more active role in the proceedings." *Id.* (internal quotations and citation omitted). The ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* at 1052. (citation omitted).

However,

[t]here is no bright line test for determining when the administrative law judge has assumed the role of counsel or failed to fully develop the record. The determination in each case must be made on a case by case basis. On appeal [the Court of Appeals for the Sixth Circuit] has indicated that it will 'scrutinize the record with care' where the claimant appeared before the administrative law judge without counsel. *See Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981). This special scrutiny, however, does not always result in reversal. *Id.* It is clear that a claimant may waive his statutory right to counsel. 20 C.F.R. § 404.971.

*Id.*; *see also Duncan v Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) ("[E]ven though we scrutinize with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal.").

Instead, each case must be examined on its own merits "to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing." *Duncan*, 801 F.2d at 856.

Here, Plaintiff asserts that "[t]he record as a whole and the circumstances surrounding this case should have required additional development on the part of the ALJ, or at the very least, a supplemental hearing." (ECF No. 9, at pg. 9.) Specifically, Plaintiff argues two points. First, Plaintiff contends that because the ALJ "discredited every piece of opinion evidence of record," "it is impossible to understand how [she] settled at her [RFC determination]." (*Id.*) Second, he maintains that the ALJ improperly used his letter written to ALJ Yerian to determine that he wished to proceed without a supplemental hearing. (*Id.* at 10.) Because Plaintiff addresses his second point first, the Court turns to this assertion first as well. (*See id.* at 9–12.)

By letter dated October 6, 2017, ALJ Lesperance informed Plaintiff that ALJ Yearian had retired and informed him that she was the new ALJ assigned to his case. (R. at 244.) ALJ Lesperance notified Plaintiff of changes to the exhibits in the record and specifically indicated that if he objected to any of the exhibits in his record or wished to present argument that exhibits that had been removed should be admitted, he should send notice in writing within ten days of receiving the letter. (*Id.*) ALJ Lesperance also explained that because she was not adding information to his file, "but simply clarifying the changes to the Exhibit list," he was not entitled to a supplemental hearing based on that notice. (*Id.*) Nevertheless, she explained that Plaitniff could "still ask for a supplemental hearing based on the letter dated October 2, 2017 . . . advising [him] of the Vocational Expert response to interrogatories." (*Id.*) Plaintiff failed to respond to either the October 2, 2017 or the October 6, 2017 letters or otherwise request a supplemental hearing.

Plaintiff asserts that the October 2, 2017 and October 6, 2017 letters were insufficient to provide him with notice that he could request a supplemental hearing. (*See* ECF No. 9, at pg. 10.) Plaintiff further asserts that "[t]here is no evidence that there was any attempt made to make sure the unrepresented [Plaintiff] understood what was going on in his case." (*Id.*) Plaintiff maintains that this is "especially troubling" given that he was "deemed disabled" by the Department of Veterans Affairs "primarily due to PTSD with a traumatic brain injury and major depression." (*Id.*) Plaintiff's argument fails.

ALJ Lesperance considered that ALJ Yerian previously proffered an interrogatory opinion from medical expert, Dr. Nusbaum (R. 621-33), and that she proffered an interrogatory opinion from a vocational expert to Plaintiff with no objection. (R. 10, 402-10.) Both of these letters outlined Plaintiff's right to request a supplemental hearing and an opportunity to submit written comments or statements. (R. 239-40, 409-10.) The October 2, 2017 and October 6, 2017 letters explicitly indicate his right to request a supplemental hearing. (R. at 244, 409.) Moreover, the October 2, 2017 letter also indicates that if he made a request for a supplemental hearing it would be granted unless the ALJ received additional records that supported a fully favorable decision. (R. at 409.) The ALJ reasonably concluded that despite at least two opportunities to request a supplemental hearing, Plaintiff failed to so.

At both hearings before ALJ Yerian Plaintiff declined to exercise his right to representation. (R. at 35, 70–71.) When a plaintiff is advised of his right to counsel, expresses an understanding of that right, and advises the ALJ that he wants to proceed without an attorney, he has been adequately informed of his right to legal representation. *Miller*, 2018 WL 1516847 at *3 (citing *Johnson v. Comm'r of Soc. Sec.*, 97 F. App'x 539, 542 (6th Cir. 2004) (finding claimant was adequately informed of his right to counsel)). Although Plaintiff points to his

PTSD, traumatic brain injury, and depression as reasons that the ALJ should have held another hearing, the record does reflects that he was capable of presenting an effective case and able to understanding the whole of the proceedings. *See Miller*, 2018 WL 1516847 at *3 ("While plaintiff was without counsel and arguably unfamiliar with hearing procedures, the record does not reflect that he was incapable of presenting an effective case.").

Plaintiff provided numerous records from the VA and advised the ALJ during his multiple hearings of his limitations and past work history. (*See, e.g.*, R. at 41–51, 76–83, 354–67.) During the hearing, Plaintiff articulated his understanding of the evidence, regulations and the hearing procedures. (R. at 70-86, 393.) Because the hearing transcript reflects that he ably articulated his position, and because he did not respond to either of the two written notices providing him the opportunity to request a supplemental hearing, the Undersigned concludes that the ALJ fully and fairly developed the record and did not have a special duty to hold a supplemental hearing. *See Miller*, 2018 WL 1516847 at *3 (finding the ALJ did not have a special duty to develop the record for plaintiff given the records submitted by plaintiff and that the hearing transcript indicated plaintiff was able to explain his position to the ALJ).

Plaintiff also asserts that ALJ Lesperance improperly relied on and misinterpreted the letter he sent to ALJ Yerian after the May 10, 2017 hearing. (ECF No. 9, at pg. 11.) ALJ Lesperance indicated the following regarding her determination that a supplemental hearing was not necessary in her November 22, 2017 decision:

> I considered the guidance provided in HALLEX I-2-8-40 and determined that I did not require a supplemental hearing to make a decision. In deciding that another hearing is not necessary, I specifically find that no additional live testimony is needed to fully evaluate the case. The previous Administrative Law Judge had obtained medical expert evidence via interrogatory (Exhibit B8F). I obtained vocational expert testimony via interrogatory (B17E). This evidence was proffered to the claimant with no objection. In fact, the claimant specifically submitted a letter to the record suggesting that he did not want to have another hearing ("I prefer

not to waste any more time on this matter") and asked that the Hearing Office issue a prompt decision. Given that several post-hearing items were proffered, the claimant was offered several opportunities to ask for a supplemental hearing but did not do so. Thus, reading HALLEX I-2-8-40 in conjunction with HALLEX I-2-5-57 and HALLEX I-2-5-42 (an "ALJ can use interrogatories at any time (point) during the hearing process"), I determined that, considering the claimant's response to our proffers and the completeness of the file, I did not require a supplemental hearing to adjudicate the case. I reviewed the entire record and listened to the hearing testimony and find that the case is ripe for adjudication on the current record.

(R. at 10.)

Plaintiff argues that the ALJ made an improper assumption based on Plaintiff's statement in his letter. (ECF No. 9, at pg. 11.) Yes, Plaintiff did not respond to either opportunity to request a supplemental hearing, and indeed had already undergone a supplemental hearing before ALJ Yerian on May 10, 2017. On this record, the Undersigned finds that the ALJ reasonably concluded that another hearing was not necessary.

Plaintiff argues that a supplemental hearing was necessary because in assessing his limitations, "failed to rely on any medical opinions." (ECF No. 9, at pg. 12.) But, the RFC determination is a legal decision, as opposed to a medical one, and its development is a decision that solely within the discretion of the ALJ. 20 C.F.R. § 404.1527(e)(2); *see Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.") (citations omitted).

The ALJ noted that she reviewed the entire record and listened to the hearing testimony She explained the reasons she did not fully adopt any medical opinion and how she assessed Plaintiff's limitations in rendering her assessment of his RFC. (R. at 18-24.) The ALJ discussed the evidence that supported her conclusion that Plaintiff was not disabled. Despite Plaintiff's implied assertion that the ALJ acted as a medical expert, the record as a whole reveals that the ALJ fulfilled her responsibility of weighing the evidence and assessing Plaintiff's RFC. *See Poe*

*v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009) (an "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding"). The Undersigned concludes that the record contained sufficient evidence for her decision and the ALJ did not err by not holding a supplemental hearing.

Still, Plaintiff argues that because ALJ Yerian requested additional evidence from Dr. Nusbaum after the May 10, 2017 hearing, "additional development was necessary." (ECF No. 9, at pg. 13.) Plaintiff provides no support for this assertion. Indeed, the opposite argument could be made as easily—that no additional evidence beyond that from Dr. Nusbaum was necessary because ALJ Yerian, who had held two hearings with Plaintiff, only sought this limited additional evidence. In any event, ALJ Lesperance reviewed the evidence from Dr. Nusbaum which informed her determination that an additional hearing was unnecessary.

Plaintiff then asserts that it was improper for the ALJ to assign "little weight" to Dr. Nusbaum's opinion. (*Id.* at 14.) Plaintiff fails to support this assertion. The basis for Plaintiff's argument appears to be as follows:

> Here, ALJ Lesperance appeared to believe that Dr. Nusbaum was incorrectly relying on evidence that was dated prior to the date last insured when formulating his opinions. ALJ Lesperance's belief, mistaken or not, is just another reason why additional development was warranted, or at least, a supplemental hearing should have been held. Dr. Nusbaum was hired by Social Security to personally review [Plaintiff's] medical record. As such, Dr. Nusbaum was considered an expert in Social Security disability evaluation. SSR 96-6p. Thus, Dr. Nusbaum was well versed in the importance of date last insured. He would not be much of an expert otherwise.

(*Id.*)[9]  Apparently, Plaintiff asserts that ALJ Lesperance could not question whether Dr. Nusbaum correctly arrived at his conclusions because he is an expert.  Indeed, Plaintiff does not assert that ALJ Lesperance is wrong, but simply complains that her reasoning, whether "mistaken or not," demonstrated that a supplemental hearing should have been held.  This unsupported argument is not persuasive.  For all of these reasons, it is therefore **RECOMMENDED** that Plaintiff's contention of error based on the ALJ's decision not to hold a supplemental hearing be **OVERRULED**.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

---

[9] SSR 96-6p was rescinded and replaced by SSR 17-2p effective March 27, 2017.  Here, because Plaintiff's claim was filed prior to the effective date, SSR 96-6p still applies in this case.

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 29, 2019                                    */s/ Elizabeth A. Preston Deavers*          
                                                       **ELIZABETH A. PRESTON DEAVERS**
                                                       **CHIEF UNITED STATES MAGISTRATE JUDGE**